IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

RODNEY H. TUNISON,

        Plaintiff,
  vs.                              **Case No. 09-4076-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
        Defendant.

## MEMORANDUM AND ORDER

In September 2005, plaintiff filed applications for social security disability income benefits and supplemental security income benefits. Back pain was plaintiff's primary affliction. These applications alleged a disability onset date of September 1, 1996. On August 7, 2007, a hearing was conducted upon these applications. The administrative law judge (ALJ) considered the evidence and decided on September 24, 2007 that plaintiff was not qualified to receive benefits on either application. Plaintiff asked the Appeals Council to review the ALJ's decision on the basis of medical records which were not considered by the ALJ. The Appeals Council refused to review the ALJ's decision which was then adopted by defendant. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's September 2005 applications for benefits.

On April 8, 2008, plaintiff underwent a microdiskectomy for nerve root decompression. On November 13, 2009, a different

application for supplemental security income benefits was granted by defendant. That decision found that plaintiff was disabled as of May 14, 2008.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For supplemental security income claims, a claimant becomes eligible in the first month where he is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  THE ALJ'S DECISION (Tr. 14-23).

The ALJ made the following findings in his decision.  First, plaintiff meets the insured status requirements for Social Security benefits through March 31, 2002.  Second, plaintiff has not engaged in substantial gainful activity since September 1, 1996.  Third, plaintiff has the following severe impairments:  degenerative joint disease and degenerative disc disease of the lumbar spine.  Fourth, plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity (RFC) to perform light work with lifting or carrying 10 pounds frequently and 20 pounds occasionally, sitting about 6 hours in an 8-hour work day, and standing or walking about 6 hours in an 8-hour work day with the need to avoid concentrated exposure to extreme cold.  Sixth, plaintiff is unable to perform any past relevant work, including that as a carpenter, cabinet installer or liquor store stocker/sales clerk.  Finally, considering plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  These jobs include:  copy machine operator; folding machine operator; and micro film mounter.

III.  PLAINTIFF'S ARGUMENTS

Plaintiff's first argument is that the ALJ's decision to deny benefits is not supported by substantial evidence, primarily

3

because it does not accord sufficient weight to the opinion of plaintiff's treating physician, Dr. Minges. Plaintiff also suggests that the ALJ should have asked Dr. Minges to conduct another examination of plaintiff.

Plaintiff emphasizes two records from Dr. Minges. On July 27, 2007, Dr. Minges completed a form (Tr. 448) which stated that plaintiff suffers moderate to severe pain and that plaintiff has worsened over the past couple of years. The form further indicated that plaintiff had the following conditions upon examination or testing: neuro-anatomic distribution of pain; motor loss; sensory or reflex loss; positive straight leg raising test; need to change position more than once every two hours; and lumbar spinal stenosis.[1] Dr. Minges reported that plaintiff can stand or sit for 30 minutes at a time. Dr. Minges also recorded that plaintiff can bend or stoop occasionally and that he can lift 20 pounds occasionally and 10 pounds frequently. Dr. Minges did not mark an answer to a question on the form which asked how many hours plaintiff could work per day, perhaps indicating that he believed

---

[1] Contrary to these findings by Dr. Minges, defendant states in his response to plaintiff's reply brief that "the medical evidence as a whole indicated no anatomic distribution of pain, motor loss, or sensory loss (Tr. 264, 270, 302-03, 313, 316, 318, 346, 353, 363-64)." It must be remembered that Dr. Minges indicated that plaintiff's condition had worsened by 2007. All of defendant's citations are to medical records which predate 2006. Most of the citations are to medical records which predate 2000. What the "evidence as a whole" indicates may not be relevant to a condition which, according to plaintiff's treating physician, has grown worse.

4

plaintiff could not work at all.[2]

On September 17, 2007, Dr. Minges examined plaintiff and concluded that plaintiff had "[p]robable spinal stenosis around L4-5 or L5-S1." (Tr. 472). He also found:

> There is some muscle wasting along the lateral border of the right tibia. Dorsiflexion of the foot is a little bit weak. There is some questionable weakness of the quadriceps muscle. There is some hint of a pelvic tilt when he tries to stand on his right leg. Deep tendon reflexes are 2+ to 3+ at the knees and 2+ at the ankles. Right straight leg is positive at about 30 degrees. Left straight leg raise is possible with right sided pain at about 30 degrees.

(Tr. 472). The report concluded that plaintiff would be admitted to the hospital to control his pain.

The ALJ repeated some of the findings but not others from Dr. Minges' July 27, 2007 report in his decision. (Tr. 20). Contrary to Dr. Minges' report, the ALJ did not indicate that plaintiff's condition had worsened in recent years. The ALJ determined that plaintiff was capable of light employment for an eight-hour workday. This may be contrary to Dr. Minges' report, although the report is ambiguous on this point. The ALJ apparently agreed with Dr. Minges that plaintiff could lift 10 pounds frequently and 20 pounds occasionally. The ALJ also concluded that plaintiff could "carry" those weights, although this is not mentioned in Dr. Minges' July 27, 2007 report.

---

[2] The question read: "4. Hours patient can work per day: 1 hour   2 hours   4 hours    6 hours    8 hours"

5

The ALJ did not have the September 17, 2007 report prior to making his decision and, therefore, did not consider or discuss it. However, the report was considered by the Appeals Council which determined that it did not provide grounds to review the ALJ's decision.

The ALJ stated that "no doctor who has treated or examined the claimant has stated or implied that he is disabled or seriously incapacitated." (Tr. 21). This statement appears to ignore the implication which may be drawn from Dr. Minges' July 27, 2007 report where he did not answer whether plaintiff could work 1, 2, 4, 6 or 8 hours per day. The ALJ stated on page 8 of his decision (Tr. 21) that he adopted the medical opinions of the state agency medical consultants regarding plaintiff's ability to do a range of light work-related activities. These opinions were given after a consultative examination on November 19, 2005 (Tr. 300), which was followed by physical residual functional capacity assessment on December 15, 2005. (Tr. 305). However, this fails to acknowledge Dr. Minges' observation in 2007 that plaintiff's condition had worsened. It also ignores that the straight leg raising tests conducted by Dr. Minges' in September 2007 indicated a worsened condition when compared with the tests recorded in November 2005 -- 30 degrees versus 70 degrees.

We believe this provides grounds for remand in this case. The ALJ's decision fails to indicate what weight he has given Dr.

6

Minges' opinion; fails to explain why the opinion does not deserve controlling weight; fails to acknowledge the implication in Dr. Minges' report that plaintiff is disabled from work (or the ambiguity arising from the failure to answer the question); and fails to address the evidence that plaintiff's condition has become worse since the consulting doctors' reports relied upon by the ALJ. For these reasons, the ALJ decision fails to properly consider the opinion of the treating physician in this case. See <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (2003) (ALJ must articulate the weight if any given to a treating physician's opinion and explain with good reasons the weight given to the opinion or why the opinion was rejected altogether). In addition, as suggested by plaintiff, the ALJ ignored the need for a consultative examination or clarification from the treating physician when the record is ambiguous, the evidence is insufficient, or there has been a change in plaintiff's condition which might affect his ability to work. See <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1166-67 (10th Cir. 1997); 20 C.F.R. §§ 404.1512(e)&(f) and 404.1519a(b). These flaws were compounded to some degree by the Appeals Council's decision which did not discuss or direct reconsideration of this matter in light of Dr. Minges' September 2007 report.

The court shall not discuss the remaining issues raised by plaintiff. The court believes whether a listing of impairment has been satisfied and whether plaintiff could perform a range of

7

sedentary employment can only be decided after the ALJ has properly evaluated the records from Dr. Minges and possibly supplemented those records with additional information.

IV. CONCLUSION

For the above-stated reasons, the court shall reverse defendant's decision to deny plaintiff's September 2005 applications for benefits. The court shall direct that this case be remanded to the Commissioner for further proceedings consistent with this opinion. This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 12th day of January, 2010 at Topeka, Kansas.

> s/Richard D. Rogers
> United States District Judge